# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **C.C. and H.S.**

**No. 17-0385** (Webster County 15-JA-46 & 15-JA-47)

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother H.H., by counsel Christopher G. Moffatt, appeals the Circuit Court of Webster County's February 22, 2017, order terminating her parental rights to C.C. and H.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights where less-restrictive alternatives to termination existed and where termination was not in the best interest of the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2015, the DHHR filed an abuse and neglect petition against petitioner and H.S.'s father, J.S., asserting that the children were the victims of neglect and/or abandonment.[2] In support of its petition, the DHHR stated that in October of 2015, a deputy sheriff was dispatched to the home due to a domestic violence incident between petitioner and father J.S. and a possible drug overdose. Upon arriving at the home, the deputy sheriff discovered that father J.S. had left the premises. Petitioner denied any drug overdose or domestic violence incident. However, C.C. was found alone in an outbuilding located near the residence. Later that evening, an ambulance was called to the home because petitioner was found unresponsive due to a drug overdose. Petitioner was intubated and flown to Morgantown, West Virginia, for medical treatment. The DHHR also noted that petitioner's parental rights to another child had been

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The DHHR later amended the petition to include allegations against C.C.'s father.

1

involuntarily terminated in March of 2011 due to repeated drug use including marijuana and opiates, and a refusal to stop abusing controlled substances.

In January of 2016, the circuit court held an adjudicatory hearing, during which petitioner was adjudicated as an abusing parent as a result of domestic violence in the home and her substance abuse.[3] The circuit court additionally granted petitioner a post-adjudicatory improvement period.

In November of 2016, the DHHR moved to revoke petitioner's improvement period and terminate her parental rights. According to the DHHR, petitioner's visitation rights were suspended in July of 2016, pending the testimony of Dr. Bobby Miller, petitioner's expert witness. However, the circuit court continued the evidentiary hearing on this issue because petitioner was hospitalized. In granting the continuance, the circuit court indicated that petitioner should facilitate Dr. Miller's testimony at a later date and a hearing date would be set after she was released from the hospital. However, petitioner did not request an additional hearing to present Dr. Miller's testimony and, in October of 2016, petitioner was charged criminally with domestic violence against father J.S. As a result, she was incarcerated until November of 2016. After her release, petitioner made no contact with the DHHR and her whereabouts and medical condition were unknown. The DHHR, concerned about petitioner's behavior and new criminal charges, argued that continuing the improvement period would not be in the best interest of the children and moved that it be revoked and that petitioner's parental rights be terminated.

In February of 2017, the circuit court held a dispositional hearing during which it heard testimony from three witnesses, including petitioner, and found that petitioner failed to comply with the terms of her improvement period. Petitioner had numerous opportunities to mitigate her issues; however, she failed to take the necessary steps, including her failure to arrange the presentation of her own psychological expert witness testimony. Petitioner repeatedly tested positive for controlled substances throughout the case, including the day of the dispositional hearing. The circuit court found that petitioner failed to participate in the services the DHHR offered. Noting that this was petitioner's second abuse and neglect proceeding, the circuit court found that she was unwilling to address her significant issues, which impacted her ability to care for her children. The circuit court also found that petitioner failed to accept any responsibility in taking care of the children. The circuit court concluded that there was no reasonable likelihood that petitioner could correct the circumstances of abuse or neglect in the foreseeable future and that termination was necessary for the children's welfare. As there was no less-restrictive alternative to adequately protect the children, petitioner's improvement period was revoked and

---

[3]While petitioner was referred to below as "an abusive and neglectful parent," we note that the phrase "neglectful parent" does not appear in the statutory framework for abuse and neglect proceedings in this State. Instead, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse *or neglect*." (Emphasis added.) As such, the Court will refer to petitioner as an "abusing parent" in this memorandum decision, as that phrase encompasses parents who have been adjudicated of abuse and/or neglect.

her parental rights were terminated by order dated February 22, 2017.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives to termination existed and where termination was not in the best interests of the minor children. According to petitioner, West Virginia Code § 49-4-604(b) requires courts to "give precedence" to the least-restrictive dispositional alternative. As such, petitioner argues that a less-restrictive dispositional alternative than termination would have been temporary commitment of the child to the State or another qualified person. Id. The Court, however, finds no error in the termination of petitioner's parental rights.

In terminating petitioner's parental rights, the circuit court specifically found that petitioner failed to comply with the terms of her improvement period. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

---

[4]Petitioner's parental rights were terminated below. H.S.'s father successfully completed an improvement period and the petition against him was dismissed. The permanency plan is for H.S. to remain in the home of the father. C.C.'s father is currently completing a post-dispositional improvement period. The permanency plan is for reunification with the father after successful completion of the improvement period. The concurrent permanency plan is for adoption.

Contrary to her argument, petitioner failed to show that she was likely to correct the conditions of abuse and neglect in the near future. The evidence overwhelmingly supported the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect. Not only did petitioner fail to follow through with any of the services offered to her through her improvement plan, she was further convicted of domestic battery against father J.S. during her improvement period. In addition, petitioner failed to take the necessary steps to present expert medical evidence of her mental state when doing so meant reinstating her visitation rights. In her brief on appeal, petitioner admits to continued drug abuse and self-medicating, which the circuit court noted throughout the entirety of her case. In fact, petitioner had previously had parental rights to another child involuntarily terminated due to her refusal to cease the use of controlled substances.

Based upon the evidence outlined above, it is clear that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect. Because of petitioner's failure to correct the conditions of abuse and neglect, the circuit court found that termination of her parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. While petitioner argues that the circuit court should have granted her more time to overcome her "complex problems," we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, because the proceedings in circuit court regarding C.C.'s father are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 22, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 23, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker